**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ADGRAIN B. McKELLAR,[1]** | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:04-CV-189-Y** |
| | § | |
| **JO ANNE B. BARNHART,** | § | |
| **COMMISSIONER OF SOCIAL SECURITY,** | § | |
| **DEFENDANT.** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**
**AND**
**NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of

the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.    STATEMENT OF THE CASE

Plaintiff Adgrian McKellar brings this action pursuant to Section 405(g) of the Social

Security Act, Title 42 of the United States Code, for judicial review of a final decision of the

Commissioner of Social Security denying her claim for disability insurance benefits under Title II

of the Social Security Act. McKellar applied for disability benefits on August 8, 2002, claiming

disability beginning June 28, 2002 due to a compression fracture in his lumbar spine, hepatitis C,

---

[1] McKellar's first name appears to have been misspelled when this action was filed. The administrative paperwork McKellar submitted during the administrative proceedings indicate that the correct spelling of his first name is "Adgrian."

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 1**

and high blood pressure. (Tr. 45, 54). He meets the disability insured status requirements through March 2007. (Tr. 10, 43).

The Social Security Administration denied McKellar's application for benefits both initially and on reconsideration. McKellar requested a hearing before an administrative law judge (the "ALJ"), and ALJ James A. Wendland held a hearing on August 29, 2003 in Fort Worth, Texas. (Tr. 282). McKellar was represented by counsel. On September 22, 2003, the ALJ issued a decision that McKellar was not disabled because he had the residual functional capacity (RFC) to perform a modified range of sedentary work, including work as a hand laborer, sorter/inspector, and packager. (Tr. 10-20). The Appeals Council denied McKellar's request for review of his case, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 3).

B.  STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c). At the third step, disability will be found if claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* §

**Findings, Conclusions and Recommendation of the United States Magistrate Judge–Page 2**

404.1520(d). Fourth, if disability cannot be found on the basis of claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e).  And fifth, the impairment must prevent the claimant from doing any  work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198.  If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).  A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis.  *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995);  *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*.  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id*. Conflicts in the evidence are for the Commissioner and not the court to resolve.  *Masterson*, 309

F.3d at 272.  The court will not re-weigh the evidence, try the questions *de novo,* or substitute its judgment for the Commissioner's. *Id.*; *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000).

C.      ISSUES

Whether the ALJ applied appropriate legal standards in finding that McKellar had no severe impairment in intellectual functioning, and whether that finding is supported by substantial evidence.

D.      ADMINISTRATIVE RECORD

1.      Relevant Medical History[2]

The available treatment records and testimony from the administrative hearing contain the following information:

McKellar underwent psychological evaluation with John Savell, Ph.D., on October 23, 2001 (eight months before his alleged disability onset date) as part of a job training program with Goodwill Industries.  McKellar reported that he was recovering from a substance abuse disorder. He was married with four dependents.  McKellar said he completed high school and described himself as a B student.  (Tr. 89).  He denied having any significant medical problems.  McKellar's goal was to complete a truck driver training course.

Savell noted that McKellar was neatly groomed, personable, friendly, and easily engaged in conversation.  (Tr. 89).  Savell described McKellar's thinking as coherent and logical, and McKellar was able to accurately remember five digits forward and three digits in reverse.  (Tr. 90).

---

[2]  McKellar contends that he has impaired intellectual functioning that constitutes a severe impairment and should have been considered in assessing his residual functional capacity.  He does not otherwise challenge the ALJ's assessment of his exertional and nonexertional limitations.  A summary of the relevant medical record will accordingly focus on evidence relating to McKellar's level of intellectual functioning.

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge**–Page 4

McKellar completed intelligence testing with the following results: a verbal I.Q. of 68, a performance I.Q. of 73, and a full scale I.Q. of 67.  Savell stated that a full scale I.Q. score of 67 placed McKellar in the mild mental retardation range of intellectual functioning.  (Tr. 90).  McKellar also demonstrated spelling skills equivalent to a fourth grade level, arithmetic skills on a third grade level, and reading at a sixth grade level.  (Tr. 92).

Savell diagnosed opioid and cocaine dependence that was in sustained remission, a dysthmic disorder, and mild mental retardation.  Savell opined that someone with mild mental retardation generally did not do well in vocational training programs, but Savell noted that McKellar had performed skilled labor positions and reported completing vocational training programs in the past. (Tr. 94).  Savell recommended further comparison of Adgrian's academic skills with the skills required to complete a truck driving course.  (Tr. 94).

On the forms McKellar submitted in connection with the disability application, he reported that he completed high school and did not attend special education courses. (Tr. 60, 285).  He also reported that he completed truck driving school in January 2002.  (Tr. 60).

2.     ALJ Decision

The ALJ found that McKellar had not engaged in substantial gainful activity since his alleged onset date and had documented severe impairments, including a compression fracture post surgery, degenerative disc disease, and back pain.  (Tr. 11).  The ALJ specifically found that McKellar's low I.Q. did not represent a severe impairment.  (Tr. 12).  The ALJ proceeded to address McKellar's residual functional capacity (RFC) and determined that McKellar could perform sedentary work that did not require him to climb or balance; stoop, crouch, crawl, or kneel more than

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge**–Page 5

occasionally; sit for more than fifteen minutes at a time; stand or walk for more than two hours during the workday; push or pull with his feet more than occasionally; work at unguarded heights or near unguarded hazardous mechanical equipment; maintain fixed concentration or attention for periods greater than 20 minutes without opportunity to briefly refocus before returning to fixed concentration; have more than superficial contact with coworkers or the public; or work in extreme temperatures and high humidity.  (Tr. 16).

The ALJ determined that McKellar could not perform his past relevant work as a truck driver, stocker, shipping and receiving clerk, order filler, and forklift operator. (Tr. 17).  However, the ALJ also presented McKellar's residual functional capacity to a vocational expert, who testified that sedentary, unskilled work would be suitable for a worker with McKellar's restrictions.  Specific examples included work as a hand laborer, sorter/inspector; and packager.   (Tr. 18, 317). Accordingly, the ALJ found McKellar was not disabled or entitled to benefits at any time through the date of the ALJ's decision.  (Tr. 20).

E.    DISCUSSION

McKellar contends that the ALJ failed to apply the appropriate legal standards in determining that McKellar's intellectual functioning was not a severe impairment.[3]  McKellar also contends that substantial evidence does not support the ALJ's determination.

Fifth Circuit authority defines an impairment as "not severe" for purposes of Step Two of the evaluation process only if it is a slight abnormality having such minimal effect that it would not

---

[3]  McKellar concedes that his condition does not meet or equal the severity criteria for Listing 12.05, which addresses mental retardation.  (Plf. Br. at 10).  *See also* 20 C.F.R. Part 404, Subpart P, App. 1, § 12.05.

be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). *See also* SOCIAL SECURITY RULING 96-3p. The courts are to presume the ALJ used an incorrect standard for measuring severity if his decision fails to refer to the *Stone* opinion by name or cite language of the same effect. *Loza*, 219 F.3d at 393.

The ALJ instead found that McKellar's low I.Q. was not a severe impairment as that term is defined and used in the administrative regulations. In addressing the existence of severe impairments, mental or physical, the ALJ did not cite the *Stone* opinion, an opinion of equivalent effect, or language compatible with the Fifth Circuit's decision in *Stone*. although the Fifth Circuit as specifically disagreed with the regulatory definition of a severe impairment. The ALJ's failure to adhere to *Stone* raises a presumption of legal error; however, it does not present cause for remand in this case given the available evidence and the reasoning reflected in the ALJ's decision.

The ALJ acknowledged that the residual functional capacity did not incorporate limitations due to McKellar's low I.Q., (Tr. 16), but opined that a diagnosis of mild mental retardation should not be based on the merits of only one test. McKellar takes issue with this opinion, noting that the ALJ did not challenge the validity of the test scores or the qualifications of the test administrator. However, the ALJ also explained why he would not view McKellar's scores in a vacuum. In particular, the ALJ noted that McKellar had past relevant experience with both skilled and semi-skilled work and had not alleged in his disability application that he was disabled due to limited intellectual functioning. (Tr. 16, 314-15). The ALJ further found that the unskilled nature of the work the vocational expert had identified in response to the ALJ's hypothetical questions would

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge**–Page 7

more than accommodate McKellar's low I.Q.[4]  (Tr. 18).

An ALJ may make factual determinations regarding the validity of I.Q. tests and compare those scores with the claimant's educational history, work experiences, and demeanor at the hearing. *See Muse v. Sullivan*, 925 F.2d 785, 789-90 (5th Cir. 1991).  McKellar provides no authority that would require the ALJ to base his decision solely on I.Q. scores from a one-time consultative examination when those scores are inconsistent with other evidence regarding the claimant's daily activities and other behaviors. *See Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998); *Popp v. Heckler,* 779 F.2d 1497, 1499 (11th Cir.1986)(per curiam); *Strunk v. Heckler*, 732 F.2d 1357, 1360 (7th Cir. 1984).

McKellar challenges the ALJ's reliance on his work history as proof that McKellar has no severe intellectual impairment.  In particular, McKellar challenges the ALJ's statement that he was able to successfully function in a work environment based on his previous work history.  McKellar points out that he earned less than $1,500 in four out of the twelve years preceding his application for benefits.  (Tr. 44).  McKellar does not explain why his earnings were low during any particular year and does not demonstrate that he had lost jobs or earned low wages due to a diminished intellectual capacity. *Cf. Muse*, 925 F.2d at 790 (finding no evidence that claimant had been fired due to inability to comprehend, remember or carry out mental or physical job duties).

McKellar also relies on a Sixth Circuit case, *Brown v. Secretary of Health and Human*

---

[4] The ALJ also found that his disability decision was generally consistent with the evaluations by the state agency physicians at the initial and reconsideration levels of review.  (Tr. 17).  The state agency physicians found that McKellar had a severe mental disorder based on diagnoses of a dysthmic disorder and mental retardation, but found that he retained the overall ability to perform basic work-related mental activities.  (Tr. 160, 174).

**Findings, Conclusions and Recommendation of the United States Magistrate Judge–Page 8**

*Services*, 948 F.2d 268 (6th Cir. 1991).  In *Brown*, the appellate court found that Brown's ability to drive, visit friends, make change, and work as a truck driver were not inconsistent with an I.Q. score of 68.  *See id*. at 270.  Besides appearing to usurp the fact-finding responsibility that rests with the Commissioner, the *Brown* opinion is inconsistent with Fifth Circuit authority that recognizes the ALJ's right to make factual determination about I.Q. scores in light of the rest of the administrative record.  *See Muse*, 925 F.2d at 789-90.

McKellar also contends that the ALJ's decision conflicts with Social Security Ruling 85-16, which provides that a person with an I.Q. score between 60 and 69 is ordinarily expected to be able to understand simple oral instructions and carry out these instructions under somewhat closer supervision than individuals with higher I.Q. scores.  *See* SOCIAL SECURITY RULING 85-16.  Ruling 85-16 explains the importance of a residual functional capacity assessment for individuals whose mental impairments are severe but do not meet the listing requirements. Ruling 85-16 is inapplicable in light of the ALJ's determination that Plaintiff's limited intellectual functioning was not a severe impairment.  Moreover, the ALJ found that the unskilled work identified by the vocational expert was within McKellar's capabilities and would accommodate his low I.Q.

Although the ALJ failed to comply with Fifth Circuit authority, the error does not warrant remand under the particular circumstances in McKellar's case.  Substantial evidence supports the ALJ's determination that McKellar had no severe intellectual impairment, and alternatively, any error in the ALJ's decision is harmless given the ALJ's determination that a low I.Q. score would not preclude McKellar from performing unskilled work available in significant numbers in the

regional or national economies.

## RECOMMENDATION

It is recommended that the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED
## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until May 4, 2005. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until May 4, 2005 to serve and file written objections to the United States Magistrate Judge's proposed findings,

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 10**

conclusions and recommendation.  It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED APRIL  12 , 2005.


 /s/  Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 11**